490　Appellate Courts of Illinois.

Heideman v. Chicago & Southern Traction Co., 171 Ill. App. 490.

---

## Herman E. Heideman, Appellee, v. Chicago & Southern Traction Company, Appellant.

### Gen. No. 16,462.

Release—*when release sufficient to bar action for injury.* A passenger on a street car received a scalp wound from a falling trolley shank. The following day a representative of the railway company on learning that his wages were from $2.40 to $2.60 per day, stated that he would not be incapacitated more than ten days and offered him $25. He receipted therefor and signed a release from liability. His wife and daughter were present at times during the conversation. The passenger was not in the employ of the company. He alleged that he thought that the payment was for wages and that the papers were receipts and that he was dizzy and could not see during the transaction. The signatures did not indicate that he was suffering from dizziness or want of sight. He could read and write and seemed reasonably intelligent. The releases were brief and plainly written. Eight witnesses testified that he subsequently stated that he had settled with the company. *Held,* the release barred action for the injury.

Appeal from the Municipal Court of Chicago; the Hon. William N. Cottrell, Judge, presiding. Heard in this court at the March term, 1910. Reversed. Opinion filed July 8, 1912.

Lowes & Richards, for appellant.

Edward J. Green and Charles C. Spencer, for appellee.

MR. PRESIDING JUSTICE SMITH delivered the opinion of the court.

The appellee brought this suit as a first-class case in the Municipal Court of Chicago against the appellant for breach of contract. The jury found for the appellee and assessed his damages at the sum of $3,500, and judgment was entered on the verdict.

On September 25, 1908, the appellee, while standing in the rear vestibule of the appellant's car as a passenger, was struck on the head and injured by a falling trolley shank that broke off the pole extending from the top of the car to the overhead electric wire. The appellant contends that the appellee was guilty of negligence in riding in the vestibule under all the circumstances in evidence; also that the appellee was injured because of his contributory negligence in having his head outside the car at the time of the accident; that the appellee had settled with the appellant and given releases that were a bar to the action, and that the damages were excessive.

From the view we take of the case it is unnecessary to discuss any of the many questions presented and argued, except those pertaining to the releases. The appellant introduced in evidence a formal release, wherein the receipt of $25 was acknowledged by the appellee and the appellant was released and discharged from all claims, etc., by reason of the said accident to the appellee; also the following: "Sept. 26, '08. Received of the Chicago Southern Traction Co. the sum of $25. In settlement of accident of Sept. 25, '08." Both writings were signed by the appellee. In the forenoon after the accident the appellant's claim agent, Mr. Oldenburg, called upon the appellee, who was then in bed, and after talking about twenty minutes the appellee arose and dressed and went into the next room, the sitting room, and there, his wife and daughter being in the room, signed the said two releases. On the trial the appellee claimed that at the time he signed said releases he was "weak

492    APPELLATE COURTS OF ILLINOIS.

Heideman v. Chicago & Southern Traction Co., 171 Ill. App. 490.

and feverish and dizzy, suffering pain in the head;" that Oldenburg asked him how much he made and he replied $2.40 and $2.60 a day; that Oldenburg said he would split the difference and give him $2.50 a day for ten days, that it was only a scalp wound and he would not be laid up longer than that; that Oldenburg gave him twenty-five dollars and told him to sign the papers; that they were receipts for the wages, and Oldenburg wanted them signed so he could show the Company what he had done with the money; that he thought they were receipts for wages and nothing had been said about a settlement with the Company for injuries; that the receipts were not read to him and he did not read them because "I didn't feel like it. I was not able to read. * * * I could not see. * * * I thought it was a receipt for this amount of wages, $25." Mr. Oldenburg testified that the appellee told him the doctor said it was only a scalp wound and didn't amount to much, and on a discussion of the amount of the settlement it was agreed appellee be paid $25, and said sum was paid; that he told the appellee that it was a settlement and explained the releases, etc., and appellee read them over and signed them. In regard to the releases the appellee's daughter testified that she and her mother were in and out of the rooms during the conversation between her father and Mr. Oldenburg; that she heard Mr. Oldenburg ask how much wages her father earned, and when he was told Mr. Oldenburg said he would split the difference and give him $25, for he thought he would not be sick longer than ten days, and that would pay him for the time he would lose; that she heard nothing said about settling the case or the release, and did not see the releases that day nor see her father sign them. Dr. Morse, a physician of twenty-six years' experience, had known the appellee eight or ten years and for several years

had been his physician, and testified that he had treated the appellee the night of the injury and the following day and subsequent thereto; that the appellee was then suffering from a scalp wound on the right side of his head about three and a half inches long, in which he put four stitches; that on the day following the accident when he called and dressed the appellee's wound, the appellee was dressed and sitting up in the sitting room, and appellee then stated to him, the doctor, that he had settled with the company. Dr. Morse also testified that the appellant paid him for his services in treating the appellee for the injuries sustained in said accident. Mr. Swineberg, the superintendent of the Western Conduit Company, testified that the appellee worked for the said company as a fireman and watchman from June, 1909, to November, 1909, and during that time the appellee talked to him about his said accident and said that he had signed a release for $25 and his doctor's bill. Six other witnesses, most of whom were apparently disinterested, testified that the appellee had stated to them that he had made a settlement with the Company.

The appellee denied making any of said statements as to a settlement. He had not been employed by the appellant and nothing was due him from the appellant for wages or any other claim, except such as might be due him because of the said injuries. The appellee could read and write, and judging from his testimony was reasonably intelligent. The two releases signed by him are before us. If any inference can be drawn from an examination of the appellee's signatures, it would be that they indicate no such mental condition, nervousness or want of sight as claimed by appellee. The release heretofore set out in *haec verba* is written so briefly, plainly and distinctly and in handwriting so large that it seems the ordinarily intelligent person able to read and write

would comprehend its contents almost at a glance, unless, of course, his mind was so disturbed that he was not in possession of his ordinary faculties. It was understood that a representative of the appellant would call on the morning in question to see appellee; and that his wife and daughter would remain about the room and the house and permit him to talk and negotiate with the said representative without taking any part in the talk, if they did not consider appellee in the possession of his ordinary faculties, is somewhat improbable, and is a circumstance that tends to prove appellant's contention that the appellee knowingly entered into a settlement with the appellant and so understood and agreed when he signed the said two releases.

We agree with the appellee that it appears unseemly on the part of large corporations to so hasten to secure a settlement and release from a person injured in an accident immediately thereafter and while they are suffering greatly therefrom, and such conduct is generally considered suspicious and a practice that in most instances is intolerable. Nevertheless, after a careful consideration of all the evidence in this case, which we have endeavored to set forth only briefly and in a general way, we are convinced that the appellee knew and understood he was making a settlement with appellant and releasing it from all liability for damages by reason of the said accident, and that the evidence is clearly and manifestly against the contention of the appellee that the said releases were obtained by fraud and misrepresentation, and we therefore conclude that the said releases are a bar to this action.

The judgment is reversed with a finding of facts.

*Reversed.*